IN THE OREGON TAX COURT
REGULAR DIVISION
Property Tax

| | | |
|---|---|---|
| PACIFICORP, | ) | |
| | ) | |
| Plaintiff, | ) | **TC 5411** |
| v. | ) | |
| | ) | |
| DEPARTMENT OF REVENUE, | ) | |
| State of Oregon, | ) | |
| | ) | **ORDER ON CROSS-MOTIONS FOR** |
| Defendant. | ) | **RECONSIDERATION** |

This matter is before the court on the parties' cross-motions for reconsideration under

Tax Court Rule (TCR) 80A.

A.      *Plaintiff's Motion*

On May 24, 2023, the court issued its Opinion (Valuation), which addressed legal issues

raised by the parties at trial and determined the real market value of Plaintiff's Oregon-situs

property based on the evidence. On June 8, 2023, Plaintiff submitted a letter, which the court

treats as Plaintiff's motion for reconsideration, requesting the correction of certain "clerical type

errors or omissions" in the May 24 Opinion. Specifically, Plaintiff's motion:

> (1) Points out that the May 24 Opinion inconsistently determines Plaintiff's
> capital structure as 36 percent debt and 64 percent equity (Opinion at 46) but later
> uses a structure of 37 percent debt and 63 percent equity (*Id*. at 73), with a
> corresponding difference in the weighted average cost of capital;

/ / /

/ / /

/ / /

(2) Notes an erroneous use of the multiplication symbol in a formula that should read: "System Value = Cash Flow ÷ WACC" (*Id.*) and a statement of the System Value (*Id.*[1]) that should read "$17,241,379,310" if the WACC is corrected to reflect a capital structure of 36/64 as described earlier;

(3) Notes additional potential corrections to the court's concluded values that flow from the foregoing (Opinion at 79-81, 83, 90); and

(4) Asks the court to either (a) amend the May 24 Opinion to reflect the removal of the value of licensed vehicles and other locally assessed properties located in Oregon, or (b) amend the concluding sentence of the May 24 Opinion (at 90) to state that the determined real market value is "prior to adjustments for licensed vehicles and other locally assessed properties."

(Ptf's Ltr at 1.) Attachment 1 to Plaintiff's motion reprints pages 73, 79, 80, 81, 83, and 90 of the May 24 Opinion, with requested edits marked in underline and strikethrough.

On June 15, 2023, Defendant responded with a letter addressing each of Plaintiff's four points. Defendant defers to the court as to the capital structure and, if the court determines the capital structure to be 36 percent debt and 64 percent equity, agrees with Plaintiff's corrections in points (1) through (3).

As to point (4), Defendant disagrees, arguing that "plaintiff's trial appraisal did not make or request such a reduction" for exempt vehicles and locally assessed property, and that "plaintiff did not allege, much less prove, that any of the income capitalized was attributable to nontaxable property." (Def's Ltr at 1.) On June 22, 2023, Plaintiff replied that Defendant's own rule requires it to "remove exempt property values of various types (for example motor vehicles) from the correlated system value," and that Defendant "routinely removes the vehicles licensed in Oregon from the value allocated to Oregon" if the valuation unit is located in multiple states. (Ptf's Reply at 2-3 & n 2, *citing* OAR 150-308-0695(4).) Plaintiff's reply states further that neither party's appraiser "removed income from the total unitary income they capitalized so as to

---

[1] Capitalized terms are defined in the court's May 24, 2023, Opinion (Valuation).

remove the value for exempt vehicles or locally assessed property," with the consequence that the court's determined value necessarily includes value attributable to such property. (*Id.* at 3.)

The court concludes that Plaintiff's arguments are well taken as to all of points (1) through (4) in Plaintiff's motion. The court adopts the revisions to the Opinion proposed in Attachment 1 to Plaintiff's motion. The court will issue an amended opinion reflecting those revisions.

B.      *Defendant's Motion*

On June 15, 2023, Defendant filed a motion for reconsideration asking the court to reconsider four portions of the May 24 Order:

> "(1) The deference to be given OAR 150-308-0690, the department's rule adopting the WSATA Handbook unitary valuation guidelines for the central assessment of plaintiff's property according to ORS 308.655 and ORS 308.205;
>
> "(2) Application of the HCLD approach to value as one of the indicators of value for all property owned, used, or held for future use by a centrally assessed taxpayer;
>
> "(3) ORS 308.205 and OAR 150-308-0690 require consideration of market evidence, i.e., the amount typical buyers would offer that could reasonably be expected by sellers of the unitary property; and
>
> "(4) Internal confidential planning documents used by typical buyers, the PUC, and the company for planning purposes, support some estimated amount of real growth in cash flows/income greater than zero."

(Def's Mot for Recons at 1.)

As to Defendant's first issue, Defendant's arguments are not well taken. The court adheres to its reasoning, based on the text and statutory development, that ORS 308.655, referring to rules "to be followed in answering any requirement of ORS 308.505 to 308.674," is not "delegative" as to the application of valuation methods. The court also adheres to its conclusion that *Portland Canning* and the later cases cited in the May 24 Opinion bind this court and preclude any discretion in Defendant under ORS 308.205(2) to compel the use of valuation

methods and procedures that fail to result in market value in a particular case. *Portland Canning Co. v. Tax Com.*, 241 Or 109, 113, 404 P2d 236 (1965).

Defendant's second request asks the court to reconsider its decision to assign no weight to Defendant's cost approach indicator of value. The court adheres to the reasoning in its May 24 Opinion but will clarify its conclusion by making the following changes to the text shown on page 34 of the May 24 Opinion:[2]

> "~~And even if an exhaustive analysis of Defendant's historical market-to-book ratio studies were to reveal that HCLD was below real market value in the subject transactions, those historical studies of sales of other companies do little to help the court decide the real market value of the specific property at issue in this case as of January 1, 2020.~~
>
> "*Defendant's market-to-book ratio studies do not persuade the court that a willing buyer and seller would be likely to give any particular weight to the result of an HCLD analysis as of any particular date, nor do they overcome the loose and tenuous connection that the WSATA Handbook declares between an HCLD result and fair market value. First, in post-trial briefing Plaintiff raised evidentiary issues regarding the comparability of the historical transactions, which Defendant dismissed as 'attempts to pick nits.' (Ptf's Post-Trial Br at 60-62; Def's Post-Trial Response Br at 18.) But assuming that the parties were to engage in an exhaustive analysis of the historical transactions that would allow the court to lay those issues to rest, a larger issue would remain. Defendant argues that Eyre's HCLD result, which he 'tested' against the 'actual market evidence' of his market-to-book ratio study, 'would certainly constitute the lowest price a knowledgeable seller would be willing to accept for the property.' (Def's Motion for Reconsideration at 8; Ex A at 23.) Yet Defendant's position is directly contrary to the discussion of HCLD in the WSATA Handbook, which states that 'HCLD cannot be considered either a lower or upper limit of value * * *.' WSATA Handbook at II-10 (emphases added). Rather, according to the WSATA Handbook, HCLD is at most an 'anchor' that 'provides a vague limit.' Id. In other words, Defendant's own rule states that as of any given valuation date real market value is likely to have drifted above or below HCLD. Id. ('[T]he market's perception of value is likely to be at odds with rate base at any given time * * *.') Defendant's evidence, and the disclamatory statements in the WSATA Handbook, leave the court without a basis to assign any weight to a cost approach based on HCLD, with or without Defendant's market-to-book ratio studies.*"

---

[2] Text to be deleted is shown in quotes with strikethrough. Text to be added is shown in quotes and in italics.

As to Defendant's third request, the "market evidence" that Defendant asserts the court failed to consider is the historical market-to-book analysis conducted by Defendant's expert Johnson. (*See* Def's Mot for Recons at 11-13.) The clarifying change above applies to Defendant's third request as well. The court otherwise adheres to the reasoning in the May 24 Opinion.

Defendant's argument supporting its fourth request repeats arguments made in earlier briefing, with the addition of new factual assertions without citation to any evidence. (Def's Mot for Recons at 13-20.) The court adheres to the reasoning in the May 24 Opinion. Now, therefore,

IT IS ORDERED that Plaintiff's motion for reconsideration is granted.

IT IS FURTHER ORDERED that Defendant's motion for reconsideration is granted.

IT IS FURTHER ORDERED that the court modifies the May 24 Opinion to the extent stated herein. Those modifications, along with minor clerical corrections, will be reflected in an Amended Opinion (Valuation) to be issued today.

Dated this 17th day of July, 2023.

7/17/2023 10:48:02 AM

**Judge Robert T. Manicke**